argument not to exceed 15 minutes per side. Mr. Pickrell, you can proceed for the appellant. May it please the court, my name is Mark Pickrell and I represent the appellant in this case. I'm going to try to refer to him as the appellant. I've worked for a long time in this court, trying to use the names of parties, but in the nature of this case being a juvenile proceeding, I'm going to call him the appellant and if I mess up then it's just to have him. We're defendants. What? We're defendants. I'll try either one. The court has often asked us to try to not use those words so that you can be clear about who we're talking about, both in our briefs and orally. One's a male and one's a female. So I'll probably go with JAS as best I can, Your Honor. I've asked for two minutes for rebuttal. Unless the court has questions about the evidentiary issues raised in our brief, I'm going to focus on the sufficiency of the evidence argument. I just have one question out of curiosity. So we had the Vanderbilt Clinic on this, on the briefs, but they're not here anymore? I am running the Vanderbilt Clinic this year, so I substituted in. Okay. I'm sorry, I should have been clear. I'm so used to being a regular appointed attorney this year and there's not a student here because there were some issues. I had concerns about ability to consent and also ability to get students ready to go. That's why. But unless the court has questions about the evidentiary issues, I'd like to spend my time discussing sufficiency of the evidence. Well, I do have a question for you on the evidentiary thing. Certainly, Your Honor. As you know, we can affirm on any basis supported by the record. The court admits it under 807, I think. But we also have this rule, I think it's 801 D1B, that allows admission to rebut an attack on the person's credibility when they testify in court. Right. And you say that is not applicable here because this isn't a charge of recent fabrication? Am I getting that right? I think, yes, Your Honor. It's been a long morning. Yes. But setting that aside, the rule currently allows for admission of a hearsay statement under this specific provision. There's another section, too, if the witness's credibility has simply just been impeached or he's been crossed as having made inconsistent statements. Isn't that just an independent basis on which, I'm not talking about this statement right here, but a statement can be admitted under 801 D1B? Right. And the answer, Your Honor, is I think if you look at the language of the rule, the question, and it was not covered in the brief significantly, is when is a party permitted to bring in evidence of a prior consistent statement? Right. So then the question has to be, well, what does the other party have to do to say that there's been some inconsistency? And, Your Honor, let me just say factually that there was an inconsistency in K.V.'s statements throughout time that was presented on cross-examination that would appear rightfully to challenge the consistency of the statements over time. Even though it's not about a fabrication in this case of testimony, there is that factually, as an officer of the court, obviously I want the court to be aware that there was a defense presented that the statements were inconsistent over time. Right. And I think that Your Honor is definitely correct that even if this doesn't go into the catch-all, it may very well be appropriate under the prior consistent . . . Right. Well, that's a remarkably candid answer. I appreciate it. I can't remember the exact language of the provision in 801 to which Judge Kethledge refers. Isn't it something like, to rebut a charge of recent fabrication, or isn't there some other or language, some more broader catch-all? Yes, Your Honor, and that's why I'm taking the statements that I've made today. And it's why I really wanted the court to focus on the sufficiency of the evidence arguments. Okay. Well, I give you full credit for your candor. And that's really the issue here is, and I would hope that the court would look at the Eighth Circuit's approach to Plenty of Arrows, Reddist, and White Bull . . . and see whether or not this court, and it's cases of a similar nature, approaches Jackson v. Virginia the same way that the Eighth Circuit does. I must admit, having looked at all of this court's cases and all the Eighth Circuit's cases, there does not seem to be a consistency in the approach. And so, with the time that I have, I'd like to talk about Jackson v. Virginia and how it applies in the context of cases like this one. With Jackson v. Virginia, obviously due process requires that there be the power of appellate courts to review a finding by a trial court . . . where, and the question is, is whether or not the charges alleged have been proven beyond a reasonable doubt. And so, logically what that requires is that the appellate court has to look at that and say . . . Is there any rational finder of fact you could look at this and say there was no reasonable doubt? So, it's the absence of reasonable doubt. And respectfully, on behalf of JAS, I would submit that there is reasonable doubt here under Jackson v. Virginia . . . in the way that the Eighth Circuit is treating it, that I would like the court to really look at this question about . . . what do we do when we have a child's vague statements about a sexual act . . . not as defined under the statute, but as one would normally refer to a sexual act . . . when we have charges of a sexual act that is very specifically defined by Congress in 18 U.S.C. 2246-2A. It's important to note, Your Honor, that 2246-2A has very specific anatomical requirements for there to be a violation. And, the Eighth Circuit in Plenty Arrows emphasized that there must be proof of those anatomical connections . . . in order for there to be guilt under the Jackson v. Virginia standard. And here, Mr. JAS respectfully submits that there was not sufficient proof . . . as in the Eighth Circuit cases that we cited in our brief . . . sufficient for this court to affirm the conviction. I mean, my recollection of those Eighth Circuit cases is . . . there were . . . the child, the victim, I guess, or the putative victim . . . made references just to her midsection, I think in one of those cases. My point is . . . my recollection is that the references there were arguably more general than they were here. I must respectfully disagree, Your Honor. And, that's . . . I'm trying to enlist . . . Specifically, it had to do with much more defined area of the body than the victim in this case. And, I am going to refer to her as the victim. I don't want to prejudice my client. I just . . . I understand. I just think it's, at this point, easier . . . Or, you could say the girl. The victim here. Pointed to her midrib . . . the area of her crotch, when I was raised. That's what we would call it. And, nothing further. Whereas, in the Eighth Circuit cases, it was right next to the vagina, the hole. It was right next to the derriere. And so, in those Eighth Circuit cases, actually, the testimony of the victim was far more specific than the testimony that occurred here. Because . . . No. Okay. I mean, yes, in the sense that there were more specific references to parts of the body, I guess. I mean, right next to one hole or something. Correct. Very . . . much closer than the middle or, in this case, of pointing to the crotch. But, yet, there was obviously that ambiguity. Yes. And, absolutely, Your Honor. And, that's . . . Right next to . . . and, I mean, I don't think I need to explain it further. Yes, understood. And, it's that ambiguity or that vagueness, as the Eighth Circuit referred to it, that is the danger in these cases. Because . . . I understand that. But, I think . . . I mean, in this case, we do have more than just the crotch. I mean, she said he put his pee in her pee. Correct. Correct. And . . . And, if I could address that, Your Honor. Yes. The statute segregates the penis from the vulva. Men and women don't have the same ones. So, whatever she was referring to, logically, although this is a child we're talking about, to whatever she was referring to, logically, is something that men and women both have. Well . . . His pee and her pee. Couldn't a jury, just looking at that part of her testimony, conclude that she's referring to the part of the anatomy one uses to pee, to urinate, as opposed to defecate? This was a bench trial. And, the answer is, beyond a reasonable doubt, no. I know it was a bench trial. Sorry. And, that's why what Jackson v. Virginia requires is the question. How about, you know, after the fact, she says that it burned, like it was on fire. Correct. When she peed. Yes. And, she also said it hurt a lot. Correct. And, that's the issue here, Your Honor, because we know from the medical evidence that even though the nurse who did the first examination said that the victim had a torn and open hymen, we know that that was not true. And, therefore, we know, based on the testimony of the doctor who testified on behalf of JAS, that there was not vaginal penetration by JAS. So, the only way there can be a . . . Sorry. Can you say that again? Sure. We know, based on the medical testimony, that her hymen, even though the first report said it was open and torn, and that was not true. It was not open and it was not torn. And, therefore, there was not vaginal penetration by JAS's penis. So, in order to have a violation of 2246-2A, there has to be some penetration of the vulva not involving vaginal penetration. Didn't the doctor find injury? Hmm? The nurse didn't, but the doctor found injury. The nurse found injury, too. I don't believe that's correct, Your Honor. Okay. That's what I'm asking you. Yeah, I don't believe that's correct, Your Honor. I believe the doctor actually said he saw no evidence of damage. That was his testimony, or injury. And, so, I think he specifically said that there was not any injury that was visible. Now, wait a minute. He didn't find injury in this sense, but he did note this occurred eight days after the incident. I believe it was the medical exam, and there were no signs of physical trauma. There was redness, and she had an open hymen, not a torn one, presumably. But, also, there was a defense expert who said that neither of those things was evidence of trauma or sexual activity. It doesn't preclude it, and that's the issue that we have, Your Honor, is that the proof shows, and my time is running out here, the proof showed that the doctor who testified at trial said, had there been vaginal penetration, there would have been evidence that was visible that it was not existent. So, we know, based on the evidence presented at trial, there was not vaginal penetration. I just don't understand that. You don't understand? I don't understand that there was testimony that precluded the possibility of vaginal penetration. The doctor put on by JAS said specifically that had there been vaginal penetration by a 17-year-old male with an 8-year-old female, that there would have been a notch, or he used another word, in the hymen that would be visible. That was his testimony. Now, that doesn't mean, in his testimony, I see my time is up. Well, I think we would want you to finish answering that question, and then I might have another one for you. As many as you want, Your Honor. I'm here, glad to answer anything. That's the issue, Your Honor, with the statute, because the statute doesn't require vaginal penetration. It permits vulval penetration, and so the evidence here says we don't… However slight, too. However, sure, there has to be some penetration. You could violate the statute without… Without vaginal penetration, absolutely. And the issue there as to redness and pain, Your Honor, urinating, is that the medical records showed that this victim suffered from a urinary tract infection, which would explain redness. Redness would, by the way, be present in 53% of all normal healthy female… Did she have that infection nine days later when she was examined? My recollection, Your Honor, is that the medical evidence of the urinary tract infection was contemporaneous with the nurse's, the SANE nurse's sexual exam. But please check me on that. That's my recollection. Even if it occurred later, the fact of the matter is that there is a logical explanation, A, for the redness, which would be normal for most girls of that age, and B, specifically pain urinating, would be an obvious repercussion from having a urinary tract infection. And here's the thing, Your Honor, because there is… The medical evidence shows that there was not vaginal penetration, but as Your Honor pointed out, there may be vulval penetration. The question is how does a defendant have vulval penetration, not vaginal penetration, that hurts, as Judge Gibbons pointed out, and yet doesn't cause the damage that should have been there. You know, the thing is, what I'm thinking here is sort of to sum up where this would take us if we follow along with this argument. Obviously, hurt language and statute don't match. You wouldn't expect them to. But giving the best inference to her, to what she said about the incident, the language for sexual act might have been met. The ultimate question is going to be the beyond a reasonable doubt. Correct, Your Honor. That's the issue. And that's really why I think in the end, any Jackson v. Virginia case is up to the judgment of the members of this court. I mean, the question… Because really what we want to have, what the Supreme Court says we should have when appellate courts are reviewing jury verdicts, or in this case, a bench trial verdict, is on the one hand, the members of this court weren't there to be able to see the witnesses. And that's an institutional weakness of this body. On the other hand, we have to have some review, particularly where you have a bench trial, because single minds can make mistakes. And so, Your Honor, I would submit, and respectfully on behalf of JS, I would submit that the Eighth Circuit actually is getting it right that when it comes to a crime of this nature, a crime of this seriousness, that vague statements, even though that's the best we can do with child witnesses, are insufficient to show guilt or to adjudicate juvenile delinquency would be the technical phrase. But in particular here, looking at the medical evidence and the medical facts, there is significant and should be significant reasonable doubt whether or not the requirements of 2246-2A were met. Thank you, Your Honor. Thank you. Good morning. May it please the court, my name is Jeff Davis. I represented the United States at trial of this matter. I would like to address the question first regarding 807, because I've been going over Judge Edgar's opinion quite a bit.  Well, not so much 807, but 801-D1-B, because that was amended in December of 2014. And prior to that, The trial was after, right? The trial was in December, I mean October. I think we have a keen interest in the sufficiency issue. Okay. All right. I will move to the sufficiency argument. Unless anyone disagrees. No. Maybe the medical evidence you can speak to. If I were you, just speaking for myself, I would start with the medical evidence, because it seems to me that arguably that gives you a bit of trouble, particularly when you consider the nurse's finding of a urinary tract infection and so on and so forth, or taking it from there. Right. And, again, the standard of review, this court said in Seymour, is de novo. But it's to be considered, after viewing the evidence in light, most favorable to the prosecution in any rational trial. We're very, very familiar with the standard. So in this case, we had the child state that he put his pee in her pee, it hurt, and it burned like it was on fire when she went to the bathroom. Eight days later, she's taken for a medical exam. And everything she says to those nurses is history of what happened. And to the nurses, she said, he raped me and my uncle, I didn't like it, he put his thing in my thing, I don't want him to do it anymore. And there is no physical evidence or medical evidence. But, again, the standard is penetration of the vulva, however slight, by the penis. That's the outer area of the labia. And that's all. We don't have to prove injury. We don't have to prove beyond that. Mr. Pickerel points to the testimony of the defense expert that, had there been full penetration, the hymen would have looked differently than it did. Yes, had there been full penetration. Apart from, I don't have to prove full penetration. What is your response to his point? Well, I think my response is, and in approaching this case, I don't think children understand, they don't have an understanding of full penetration. I'm talking about the medical evidence. Would you concede that we ought to take it as an undisputed fact, which is kind of how Mr. Pickerel, that's what he's arguing for, that the medical evidence here establishes, at least creates a reasonable doubt that there could have been full penetration? No. So what's your counter to that? His expert says it doesn't look like this if there's full penetration. I forget, did you have an expert who testified otherwise? No, I had the SANE nurse that did the examination. And we had her go through where she said open hymen. By the way, all hymen are open. If it isn't open, there has to be an operation to open them. So that was a misstatement by our SANE nurse. In addition to that, she said intact. She made a lot of errors, but she documented through her report three different times that she was seeing something that made her document it three times, and that was her testimony. And at the end, she testified, yes, I do believe there was a sexual assault in this case. She's the only one that examined the child. Dr. Gertin, their expert, who is a renowned expert in the field, we've used him before and we don't question his expertise. He looked at those reports and he said, you know, these are red erythema is normal in some children. Then he went through the other portions, but he also stated that medical history in this case is sometimes the most important thing you have, especially when it's a delayed examination of eight days. You're not going to see a lot of evidence. You're not going to see anything the majority of the time that these occur. So you go back and, you know, a lot of times they fall back on what the victim says happened and then what happens in the medical exam. And when they're well done, doctors will actually ask the child, okay, what happened and have them show, physically show them. In this case, that didn't happen. But we do have this child stating that. She points to her groin area. And then Nurse Karsten, even on cross-examination, said, well, we filled out this chart where, you know, vulval penetration and the questions were asked, well, you know, children don't understand that terminology. Did you explain it? Yes. And about the penis, penis vulval penetration, that was part of the chart. And, again, the nurse asks, you know, she didn't document what the child said regarding those things in her report, but she says, I do these all the time and I make sure they understand. So is it your argument that the examining nurse, the nurse who saw her eight or nine days later, that her testimony would allow the trier of fact, beyond a reasonable doubt, to reject the expert's testimony that the condition of her hymen precluded the possibility of full penetration? I didn't think of it that way. I think that's what Mr. Pickerel is saying. He's saying that medical testimony by that expert precludes, not just creates a reasonable doubt, but precludes a finding of full penetration. And my question is... No, I wouldn't disagree with that. You didn't argue that... No, we didn't argue full penetration. We didn't try our case based on full penetration. We based our case on how penetration is defined in the statute. I understand however slight. Doesn't that sort of throw out the window, the it burned thing, if we're talking however slight? I mean, Mr. Pickerel just made an argument. I'm not a doctor. I don't think so. See, what the expert said, like our expert, the forensic interviewer, she said when this child, when she interviewed her, this child said that also. And we had another expert, Fran Waters, that testified that does a lot of work with children of this nature. And they both testified to the fact that when you have a child that describes what happened, that's one thing. But when they put a physical reaction, a feeling with that description, that heightens their sensitivity, yes, and the credibility of this child. Because she said after she just happened and went to the bathroom. That could be a very important fact. But what about this urinary tract business? Was that when she was examined, eight or nine days after? Yes, it was noted in the chart. That she had a urinary tract infection? Yes, yes. So that was not discovered until the eight days later? Right, right. But again, you go back to what this child said. This child said she's describing what happened, correct? And she says, I remember when I went to the bathroom after that, it burned. It hurt a lot and it burned. Couldn't that be true of a urinary tract infection? Yes, but I'm saying she put the two together. And that's what our expert said. When a child describes a physical act of this nature, again, they don't know what full penetration is or anything. It's a problem, though. I mean, normally, I would imagine the statement that when you have those two things together, it's powerful evidence that an assault happened. I totally get that. I don't think they're thinking of a person who has a urinary tract infection in most of those instances, right? They're assuming probably they don't have that. But again, we go back to the standard that this court has to review this case on. And you don't independently weigh the evidence in this case or the credibility of the witnesses. Judge Edgar, this was a bench trial, and Judge Edgar sat through it. He heard the victim. He heard the nurses, and he heard their experts' testimony. I'm just wondering if we can really use this burning testimony, the testimony about it burning afterwards, can we really reasonably use that given what seems to be a very plausible alternative explanation for that? And when you're looking at that, I would go back to Dr. Girton's testimony, because he doesn't clearly say, well, if it's a urinary tract infection, that's what she was feeling. He just says there was a possibility there in his video deposition. That's what he says. And he also says the history of this child explaining everything is very important in that determination. But these are all difficult cases. There are a lot of them. And I've been doing these for 22 years, and I've never had a case where I've had physical evidence of full penetration. You get a plea on those cases. We don't have those. So I don't disagree that that is an issue. But, again, Judge Edgar listened to all the witnesses. He, you know, the credibility of KV, the child, is always the center of these cases. And ultimately he found her credible and believed her testimony. Is there a call? Okay. Thank you. Thank you. Thank you for your argument. Thank you. Just on that, let's say we set aside the burning sensation for the reasons we've talked about. Yes, sir. Why isn't his pee and her pee enough if the judge finds her credible? Pee and pee, you know? I mean, it's what you use to pee. I don't know if that's what that means because that testimony wasn't elicited from the government. The government had the ability through leading questions to have all the specificity that the government needed to prove its case. More than that, the government had the ability to charge JAS under 2246 to D with simple contact with the genitalia, direct contact by something, penis or not. And it would have been a violation of the statute. The United States chose not to charge 2246 to D. They specifically said 2246 to A, which requires some proof of penetration. And an 8-year-old child who, by the way, I don't have much time because I didn't think it would be possible to go through the time of the unfortunate education of this child from initially saying nothing happened, responding to a friend's rape, responding to questions from the sane nurse who clearly put incorrect information on her report, through the investigators who violated the guidelines regarding interviewing child victims where the first time during the day she said nothing happened and then later in the day they came back despite the guidelines and then she starts repeating things that adults have been saying so that even the words that she says on this record, she's maybe credible as rain, she just doesn't have an understanding as to what is taking place sufficient to say that there is an adjudication of rape, which is what took place here. And that's the problem in this case. And the United States has the ability. I'm sorry, Your Honor, my time is up. Are we done? I think we really get it. Thank you, Your Honor, I appreciate it. Thank you both. Mr. Pickrell, thank you so much for taking this case. I mean, you're appointed under the Criminal Justice Act. I mean, I always said there's a place in heaven for defense lawyers, but there must really be a place in heaven for people who take on these kinds of very difficult cases. We thank you.